TODD A. ROBERTS (SBN 129722)
KEVIN W. ISAACSON (SBN 281067)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 930
San Jose, CA 95113
Telephone: 408.287.6262
Facsimile: 408.918.4501
Email: todd.roberts@ropers.com
kevin.isaacson@ropers.com

Attorneys for Plaintiff
S.A. JAMENDO, a company formed under the laws of
Grand Duchy of Luxembourg

ROPERS MAJESKI
A Professional Corporation
San Jose

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

S.A. JAMENDO, a company formed under the laws of Grand Duchy of Luxembourg,

Plaintiff,

v.

NVIDIA CORPORATION, a corporation organized under the laws of Delaware, and DOES 1 through 50,

Defendants.

Case No.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, UNJUST ENRICHMENT, AND UNFAIR COMPETITION**

Plaintiff S.A. JAMENDO ("Jamendo"), by and through its undersigned attorneys, for its Complaint against Defendant NVIDIA CORPORATION ("Nvidia"), hereby alleges as follows:

## NATURE OF ACTION

1. Jamendo is a worldwide leader in connecting independent musicians with music lovers. It pioneered the use of permissive licensing, enabling artists to legally share their music through its platform, Jamendo.com. Through sustained effort, innovation, and consistent success over the years, Jamendo has evolved into a major platform, now hosting more than 500,000 tracks from over 40,000 independent artists worldwide.

2. Jamendo carefully curates its extensive music portfolio, enhancing accessibility through creative categorization and detailed tagging that guide users toward discovering new artists and tracks. Through these sustained curation efforts, Jamendo has developed, and is the author and owner of, a valuable copyrighted compilation of data ("Jamendo Database"), encompassing hundreds of thousands of tracks on its platform. Jamendo's original selection, coordination, and arrangement of musical works and sound recordings and associated metadata, including distinctive and granular tagging of each track.

3. Through continuous investment in refining and expanding the Jamendo Database, Jamendo strengthens the quality and relevance of its platform, attracting both artists and listeners. These ongoing efforts create a dynamic user experience and reinforce the platform's value by driving engagement, discovery, and sustained user interest.

4. Jamendo's platform also advances the commercial interest of its artists. Through its dedicated service, Jamendo Licensing, the company actively licenses tracks from its platform for commercial use. This ensures that artists not only share their music widely but also have meaningful opportunities to generate revenue from their work. For many artists and tracks, Jamendo has been granted the exclusive right to the commercial use of tracks. In such instances, artists are looking solely to Jamendo to promote and regulate the commercial use of their tracks for the mutual benefit of Jamendo and the artist.

5. By leveraging both its platform and the Jamendo Database, Jamendo fosters user engagement and deepens connections with music, which in turn drives demand for commercial licensing. This ecosystem creates a direct pathway from discovery to monetization, enabling the use of tracks in films, television shows, advertising, and other commercial applications, while ensuring that artists benefit from the growing exposure and demand for their music.

6. The Jamendo Database is a valuable asset independent of the tracks hosted on the

ROPERS MAJESKI
A Professional Corporation
San Jose

Jamendo platform, serving as a key catalyst for connecting users with artists. To facilitate access to music, Jamendo has, in certain limited instances, made portions of the Jamendo Database available for non-commercial research under specific agreements. However, any commercial use has always required an appropriate license from Jamendo.

7. Nvidia promotes itself as a leader in accelerated computing, built around a singular mission: solving complex challenges that others cannot. It highlights Nvidia's work in artificial intelligence (AI) and digital twin technologies, emphasizing how its innovations are transforming major global industries and driving meaningful societal impact.

8. While pursuing commercial success, Nvidia has blatantly disregarded Jamendo's intellectual property rights by using the Jamendo Database as well as the musical works and sound recordings listed in **Exhibit A** to develop its AI platforms, including training its AI engine, without any authorization from Jamendo. The musical works and sound recordings listed in Exhibit A are identified herein as a preliminary and representative sample; upon information and belief, they do not constitute an exhaustive list of registered works contained within the Jamendo Database taken and used by Nvidia without permission. Jamendo is in the process of conducting a comprehensive search of the U.S. Copyright Office records, and anticipates identifying additional registered works within the Jamendo Database during the discovery process in this matter.

9. Nvidia refused to engage in meaningful discussions with Jamendo regarding its unlawful infringement when contacted by representatives of Jamendo. Nvidia has thus necessitated this action for copyright infringement, breach of contract, unjust enrichment, and unfair business practices arising from its unauthorized use of the Jamendo Database as well as the musical works and sound recordings listed in **Exhibit A** in the development, training, and operation of a commercial generative AI systems.

10. Nvidia's conduct is a blatant violation of the Copyright Act of 1976. The

ROPERS MAJESKI
A Professional Corporation
San Jose

Copyright Act of 1976 reflects a carefully calibrated balance between the rights of authors and the interests of the public, rooted in the constitutional mandate to "promote the Progress of Science and useful Arts" by granting authors and inventors exclusive rights to their works for limited times. *Universal City Studios, Inc. v. Sony Corp.*, 659 F.2d 963 (1981), *Threshold Media Corp. v. Relativity Media, LLC*, 166 F. Supp. 3d 1011 (2013), *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (2006). This balance is achieved through a framework of exclusive rights, limitations, and exceptions designed to incentivize creativity while ensuring public access to knowledge and culture.

11. Nvidia's conduct has disregarded the balance struck by the Copyright Act of 1976 by taking and commercially using Jamendo's Dataset and many tracks for which Jamendo holds the exclusive right to use commercially. Nvidia's conduct has caused significant harm to Jamendo, including loss of control over its compilation, diminution in the value of its licensing market, and loss of revenue.

12. Jamendo seeks injunctive relief, damages, restitution, disgorgement, and all other appropriate relief.

## PARTIES

13. Plaintiff Jamendo S.A. is a company formed under the laws of the Grand Duchy of Luxembourg, with its registered office and principal place of business located at 51, Rue de Strasbourg, L-2561 Luxembourg.

14. Defendant Nvidia Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business located at 2788 San Tomas Expressway, Santa Clara, California 95051.

## JURISDICTION AND VENUE

15. This is a civil action seeking injunctive relief and damages for copyright

ROPERS MAJESKI
A Professional Corporation
San Jose

infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq*. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1338(a), and § 1367.

16. This Court has personal jurisdiction over Nvidia because Nvidia is a resident of this District. Nvidia maintains its principal place of business at 2788 San Tomas Expressway, Santa Clara, California 95051, and is therefore "at home" in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a) because Nvidia resides in this District, may be found in this District, and has its principal place of business in Santa Clara, California.

## STATEMENT OF FACTS

### Jamendo's Business

18. Jamendo is "all about connecting musicians and music lovers from all over the world." It promotes independent artists by providing a platform where their music can be discovered for free by users for personal, non-commercial use, while also offering opportunities for commercialization through licensing for commercial purposes. Through this dual-purpose model, Jamendo has grown to host over 500,000 tracks from more than 40,000 artists across over 150 countries worldwide.

19. Jamendo's effort to promote artists begins with its unique licensing model. Jamendo requires all artists listing tracks through Jamendo to grant specific limited licenses allowing royalty-free personal use of tracks. This allows Jamendo's users to freely explore, discover, and enjoy new music. Should users wish to use tracks from Jamendo's platform beyond personal use, moving into any form of commercial use, more than 65,000 emerging artists have authorized Jamendo to license commercial use of their tracks. Frequently, artists have authorized Jamendo the exclusive right to use tracks commercially, including the exclusive right to authorize

ROPERS MAJESKI
A Professional Corporation
San Jose

third parties' commercial use of tracks. By giving a fair share of the revenues to the artists, Jamendo helps them focus on creating music. In fact, when a license is purchased from Jamendo, the author receives up to 60% of the license price.

20. To support its dual-purpose model, Jamendo prioritizes the curation, organization, and licensing of all musical content on its platform. In doing so, it has developed and maintains internal metadata systems, including tagging frameworks, classification methods, and organizational schemas used to structure its content. Central to these efforts is the Jamendo Database, which includes metadata and content associated with each track. This metadata is curated through human intervention and is created and continuously updated based on editorial judgment and qualitative assessment. Such curation includes the characterization of each track's genre, mood, instrumentation, and other defining attributes.

21. The structured Jamendo Database comprises an organized compilation of metadata and content that distinguishes it from a collection of unorganized factual information. Its organization and content are specifically designed to support discovery, recommendation, and licensing use cases. In this way, the Jamendo Database serves as a catalyst for connecting users to artists through discovery and recommendation, while also connecting artists to users through the commercial licensing of tracks.

<u>Creation of the MTG-Jamendo Database</u>

22. The Jamendo Database is a valuable asset independent of the tracks hosted on the Jamendo platform. To facilitate access to the music of independent artists, Jamendo has, at times, made portions the Jamendo Database available for non-commercial research purposes.

23. In one instance, in or around 2019, Jamendo created a custom subset of the Jamendo Database in connection with a publicly funded academic research collaboration with the Music Technology Group ("MTG") at Universitat Pompeu Fabra in Barcelona, Spain. This subset

ROPERS MAJESKI
A Professional Corporation
San Jose

ROPERS MAJESKI
A Professional Corporation
San Jose

incorporated Jamendo's structured metadata systems and organizational schema and is known as the "MTG-Jamendo Dataset." The MTG-Jamendo Dataset was created from the larger Jamendo Database using specific creative selections of tracks that Jamendo identified as tracks that would further the research purposes of MTG.

24. The resulting MTG-Jamendo Dataset reflects and embodies Jamendo's underlying organizational structure, including its selection, coordination, and arrangement of metadata and associated content.

25. The MTG-Jamendo Dataset has been made publicly available for specified, restricted uses, including through repositories hosted on GitHub, an online platform widely used to host and distribute datasets for research purposes. The MTG-Jamendo Dataset repository is available at https://github.com/MTG/mtg-jamendo-dataset.

26. The MTG-Jamendo Dataset was developed for and has been widely used in academic and research contexts, including for the evaluation and development of music-related technologies.

27. Notably, MTG describes the MTG-Jamendo Dataset as a "new open dataset for music auto-tagging" and confirms that it "contains over 55,000 full audio tracks with 195 tags from genre, instrument, and mood/theme categories." Through its repository on GitHub, MTG further states that it "provides elaborated data splits for researchers" and reports "the performance of a simple baseline approach on five different sets of tags: genre, instrument, mood/theme, top-50, and overall." The repository also "contains metadata, scripts, instructions on how to download and use the dataset and reproduce baseline results."

28. The MTG-Jamendo Dataset GitHub repository is intended for research use in research and includes a recommended citation: Bogdanov, D., Won M., Tovstogan P., Porter A., & Serra X. (2019). *The MTG-Jamendo Dataset for Automatic Music Tagging*. Machine Learning

for Music Discovery Workshop, International Conference on Machine Learning (ICML 2019).

Licensing Restrictions Governing the MTG-Jamendo Dataset

29. The GitHub repository hosting the MTG-Jamendo Dataset is publicly available but expressly states that "the metadata is licensed under a CC BY-NC-SA 4.0" license. The CC BY-NC-SA 4.0 refers to the Creative Commons Attribution-NonCommercial-ShareAlike 4.0 International License, which permits use for non-commercial purposes while requiring attribution and the sharing of derivative works under the same terms. This licensing model enables researchers to use the MTG-Jamendo Dataset to advance their research objectives.

30. However, the CC BY-NC 4.0 license permits use of the MTG-Jamendo Dataset for non-commercial purposes while prohibiting use directed toward commercial advantage or monetary compensation.

31. The MTG-Jamendo Dataset repository on GitHub also includes an express notice stating that it is made available solely for non-commercial research and academic use. Specifically, the repository provides:

"Please note that the MTG-Jamendo Dataset is made available solely for non-commercial research and academic use. Any other use, including but not limited to commercial applications, requires prior written authorization from Jamendo S.A. For any commercial use requests, please contact Jamendo's licensing team at hello@jamendo.com to obtain a license adapted to your project. Commercial use is defined as any use that is intended for or directed toward commercial advantage or monetary compensation, including but not limited to uses generating revenue through advertising, affiliate programs, or product integration."

32. This notice further specifies that commercial use includes any use intended for or directed toward commercial advantage or monetary compensation, including uses that generate revenue through advertising, affiliate programs, or product integration.



ROPERS MAJESKI
A Professional Corporation
San Jose

33. The GitHub repository through which the MTG-Jamendo Dataset is distributed provides direct access to the dataset files together with accompanying documentation and licensing information, including the CC BY-NC 4.0 license as modified by the non-commercial use notice. These materials are presented in connection with access to and use of the MTG-Jamendo Dataset, such that users downloading and using the dataset are placed on notice of, and proceed subject to, those terms. Any use not expressly permitted by the CC BY-NC 4.0 license as modified by the non-commercial use notice is without authorization unless specifically permitted by Jamendo.

34. These licensing terms reflect the existence of a commercial market for licensing datasets and structured metadata for use in AI and related technologies.

## Commercial Licensing Market and Value of the Jamendo Database and the MTG-Jamendo Dataset

35. Jamendo has entered into commercial agreements involving the use of the Jamendo Database, including its catalogue, metadata, and related datasets, such as the MTG-Jamendo Dataset, for AI and machine learning purposes.

36. Jamendo has been approached by multiple companies seeking access to its catalogue, metadata, and related datasets for AI-related uses. Pricing for such uses is negotiated on a case-by-case basis depending on factors including the customer profile, intended use, amount of content, territory, and duration.

37. Jamendo has not granted licenses for use directly comparable to the large-scale commercial training of generative AI systems, such as Fugatto and Audio Flamingo, without a specific negotiated agreement and compensation structure.

38. The MTG-Jamendo Dataset alone contains proprietary information related to approximately 55,000 to 56,000 tracks from approximately 3,500 unique artists.



ROPERS MAJESKI
A Professional Corporation
San Jose

39. A dataset of this scale and organization provides immediate access to a large catalogue of rights-cleared music with detailed metadata, classifications, and tags suitable for use in AI training.

40. Building or licensing a comparable dataset would require substantial time, expense, and resources, including obtaining rights from thousands of artists, organizing and maintaining a large music database, manually reviewing and validating metadata, creating and refining tags and classifications, and ensuring that tracks are legally cleared and commercially usable.

41. By using the Jamendo Database and the MTG-Jamendo Dataset without authorization, Nvidia obtained substantial value, including immediate access to a large, organized, and commercially useful music catalogue. Nvidia also avoided the time, cost, and effort required to independently source, clean, organize, and validate comparable data, including the value inherent in the database and dataset's structured organization and curated metadata.

<u>Jamendo's Investment and Distinctive Features</u>

42. Jamendo has invested significant resources over many years in developing and maintaining its music catalogue, platform, metadata, and related systems, including the Jamendo Database.

43. This investment includes, among other things, the technical development and maintenance of its database and platform, personnel dedicated to moderation, tagging, and curation, internal quality control and rights verification processes, and the creation and maintenance of proprietary classification and tagging systems.

44. Jamendo's employees manually review, confirm, and, where appropriate, adjust and improve metadata associated with tracks in its catalogue and the Jamendo Database. This manual review includes, among other things, genre, mood, theme, and instrument tags, as well as

ROPERS MAJESKI
A Professional Corporation
San Jose

ROPERS MAJESKI
A Professional Corporation
San Jose

overall metadata accuracy and completeness.

45. Jamendo's employees curate tracks into themed playlists and commercial categories. On average, approximately 120 tracks are manually reviewed and curated each day as part of these processes.

46. The MTG-Jamendo Dataset is widely used in the academic and research community because it combines a large catalogue of music with detailed metadata, genre tags, and audio descriptors.

47. The MTG-Jamendo Dataset represents only a subset of the broader Jamendo Database, which is significantly larger and contains additional curated information, classifications, and metadata created and maintained by Jamendo. The MTG-Jamendo Dataset is a derivative work based on the Jamendo Database.

48. What distinguishes the MTG-Jamendo Dataset is not only the number of tracks, but also the manual review and enhancement of metadata, the organization and classification of tracks, and the curated playlists and commercial categories.

49. These features reflect substantial investment, expertise, and ongoing effort, and contribute to the commercial value of the MTG-Jamendo Dataset and Jamendo's broader Jamendo Database.

<u>Nvidia's Unauthorized Use of the MTG-Jamendo Dataset, Jamendo Database, and Tracks Exclusively Licensed to Jamendo</u>

50. Nvidia emphasizes the transformative role of AI in shaping how people create and experience digital content. Its CEO, Jensen Huang, has stated that "AI is no longer a single breakthrough or application – it is essential infrastructure," underscoring Nvidia's view that AI underpins modern computing and creative systems. He further asserts that AI will revolutionize every industry, reflecting Nvidia's positioning of its technologies as enabling broad-based

A Professional Corporation
San Jose
ROPERS MAJESKI

innovation, including in creative and generative domains. Huang has also described the technological shift as foundational, noting that the future is about accelerated computing and AI working hand-in-hand, highlighting Nvidia's focus on enabling rapid, high-performance creation and deployment of AI-driven outputs.

51. Nvidia emphasizes the importance of scale, speed, and rapid innovation in the development of its AI technologies, including its generative audio models. Nvidia highlights its ability to train large-scale models on massive datasets and to accelerate the development and deployment of AI systems.

52. Nvidia has published papers describing its dataset construction and training methodologies, including *Fugatto: Foundational Generative Audio Transformer Opus 1* and *Audio Flamingo: A Novel Audio Language Model with Few-Shot Learning and Dialogue Abilities*. Attached hereto as **Exhibits B - C** are true and correct copies of Nvidia's publicly-available publications.

53. Nvidia has described Fugatto as "[its] first step toward a future where unsupervised multitask learning in audio synthesis and transformation emerges from data and model scale" and characterizes it as a "Swiss Army knife for sound," emphasizing its role in advancing generative audio capabilities.

54. Nvidia has developed Audio Flamingo as a "fully open-source Large Audio Language Model (LALM)" with "state-of-the-art performance in audio understanding and reasoning." Nvidia explains that Audio Flamingo enables "audio understanding and reasoning across speech, sound, and music," and includes capabilities such as "multi-turn, multi-audio chat" and "long-context audio reasoning," allowing the system to interpret, analyze, and reason over complex audio inputs.

55. As with any generative AI service, Nvidia must "train" its software models using

ROPERS MAJESKI
A Professional Corporation
San Jose

large volumes of data, including sound recordings and related metadata. This data is incorporated into a training dataset that enables the system to identify patterns and generate outputs in response to user inputs. The training process necessarily involves ingesting and copying data, as well as storing either the original data or derivative forms of it. Where copyrighted works are involved, such reproduction and the creation of derivative works must be authorized by the rights holder or otherwise constitute unlawful infringement.

56. Nvidia admits that its models are trained using "a large text and audio dataset with at least 20 million rows" and that this dataset is "exclusively comprised of open source data."

57. Nvidia further admits that it aggregates data from multiple sources to create "diverse and enriched datasets" and that it "transmute[s] existing datasets" to generate new training data.

58. Nvidia also admits that it trains on "approximately 5.9 million audio-text pairs" curated from "highly heterogeneous data" aggregated from multiple datasets.

59. Nvidia acknowledges that its model development depends on "collecting and training on highly heterogeneous data," including the combination of numerous datasets from disparate sources.

60. Despite these admissions, Nvidia fails to demonstrate compliance with the licensing terms governing those datasets, including the MTG-Jamendo Dataset, and the Jamendo Database, from which it is derived. Nvidia's publicly-available publications expressly identify MTG-Jamendo as one of the datasets Nvidia utilized for its Fugatto and Audio Flamingo products. Despite Nvidia's claim that its model was trained on a dataset "exclusively comprised of open source data," the MTG-Jamendo Dataset is not an open source dataset. According to the Open Source Initiative's Open Source Definition, to be truly "open source", a license cannot restrict the manner in which the subject matter may be used, including for business or commercial

uses. The CC BY-NC-SA 4.0 license is not considered an open source license as it restricts authorization to non-commercial uses. However, Nvidia's use was commercial in nature, being directed toward commercial advantage or monetary compensation and furthermore done without permission or authorization from Jamendo, including through the CC BY-NC 4.0 license.

61. By aggregating, copying, transforming, and "transmuting" such datasets, Nvidia necessarily reproduced, stored, and created derivative works of copyrighted material, including the MTG-Jamendo Dataset in violation of applicable licensing restrictions, and the Jamendo Database, all without permission.

62. Nvidia's use of such data was undertaken for commercial purposes, including the development and deployment of its generative AI technologies, and without obtaining the required permissions from Jamendo. Such conduct constitutes willful copyright infringement of the MTG-Jamendo Dataset and the Jamendo Database from which it is derived.

63. Upon information and belief, Nvidia copied, ingested, stored, and processed the Jamendo Database and the MTG-Jamendo Dataset, including its structure, organization, and associated metadata, within its machine learning training systems.

64. Additionally, upon information and belief, Nvidia copied, ingested, stored, and processed various audio tracks listed in the Jamendo Database and the MTG-Jamendo Dataset, including many tracks for which Jamendo holds an exclusive right to commercial exploitation. By copying such musical works and sound recordings for commercial purposes, NVIDIA has infringed upon the exclusive rights under the Copyright Act of 1976 in those audio tracks. Upon information and belief, the artists of such tracks exclusively licensed to Jamendo have not granted permission to any third party to exploit such tracks commercially. As Jamendo holds the exclusive right to commercial exploitation, Jamendo has standing to assert claims of copyright infringement falling within the scope of Jamendo's exclusive license, including at least the

ROPERS MAJESKI
A Professional Corporation
San Jose

exclusive right to reproduce, modify, fix on any media, publish, broadcast, distribute or transfer in any format the musical works and sound recordings.

65. In its pursuit of commercial success through the development of its generative AI technologies, NVIDIA has disregarded Jamendo's intellectual property rights by using the MTG-Jamendo Dataset, the Jamendo Database and various musical works and sound recordings listing within the Jamendo Database including those listed in **Exhibit A** without authorization. Such conduct constitutes infringement of Jamendo's copyrights through the unauthorized use of the database, dataset, and musical works and sound recordings in the development, training, and operation of commercial AI systems.

66. In or around March 2024, Jamendo first learned that Nvidia had utilized the Jamendo Database and/or MTG-Jamendo Dataset in the development of Fugatto and Audio Flamingo. Specifically, Nvidia explicitly recognized that it used Jamendo as a training source for Fugatto and Audio Flamingo.

67. Nvidia never contacted Jamendo, as expressly directed on the MTG-Jamendo Dataset GitHub page, to obtain a license for any commercial use of the MTG-Jamendo Dataset, the Jamendo Database, or any of the musical works and sound recordings listed in the same. As set forth above, the applicable Creative Commons license does not permit use of the MTG-Jamendo Dataset for commercial purposes. Nvidia's failure to obtain such authorization renders its use of the MTG-Jamendo Dataset, unauthorized and in violation of the governing license terms. Nvidia's unauthorized use of the MTG-Jamendo Dataset also constitutes unauthorized use of the Jamendo Database from which the dataset is derived.

<u>Jamendo's Licensing Efforts and Nvidia's Refusal</u>

68. In or around mid-2024, after learning of Nvidia's use of the Jamendo Database, MTG-Jamendo Dataset as well as the musical works and sound recordings listed in **Exhibit A** for

commercial purposes, Jamendo sought to initiate discussions with Nvidia regarding a commercial license.

69. From 2024 through June 2025, Jamendo sought to resolve the matter through multiple efforts at negotiation with Nvidia and its representatives, consistent with its standard practice of licensing datasets for AI and machine learning uses.

70. On or around September 29, 2025, Jamendo issued invoices to both Nvidia Technologies Belgium and Nvidia for payment for commercial use of the MTG-Jamendo dataset. Attached hereto as **Exhibit D** is a true and correct copy of Jamendo's invoices to Nvidia Technologies Belgium and Nvidia. Subsequent reminders and notices of default were sent to both Nvidia Technologies Belgium and Nvidia. Neither Nvidia Technologies Belgium nor Nvidia challenged the invoices or the subsequent reminders upon receipt. Nvidia eventually responded, after the notices of default had been sent, by asserting that no contractual relationship had ever existed between the parties. Attached hereto as **Exhibit E** is a true and correct copy of Nvidia's denial of any contractual relationship or obligation to pay the invoices issued by Jamendo.

71. Nvidia has achieved unprecedented financial success through the commercialization of AI technologies built on large-scale datasets, such as the Jamendo Database and the MTG-Jamendo Dataset, yet it declined to compensate or even meaningfully engage with Jamendo regarding the use of its dataset, highlighting a stark disconnect between profit and accountability.

72. Nvidia's own leadership has recognized that AI constitutes "the foundational infrastructure of the modern world" and that its responsible deployment is critical to shaping the future. Yet, despite these public pronouncements, Nvidia failed to engage with Jamendo after being notified of its unauthorized use of the Jamendo Database and the MTG-Jamendo Dataset.

73. Upon information and belief, NVIDIA has continued to use the MTG-Jamendo

ROPERS MAJESKI
A Professional Corporation
San Jose

ROPERS MAJESKI
A Professional Corporation
San Jose

Dataset despite receiving notice that such use for commercial purposes requires a license from Jamendo. Such use also constitutes use of the Jamendo Database from which the dataset is derived.

74. Nvidia has failed to cure its default, has not paid the invoiced amount, and has continued to retain the benefits of its unauthorized use of the Jamendo Database and the MTG-Jamendo Dataset.

Jamendo's Belgian Action Against NVIDIA Technologies Belgium

75. On October 14, 2025, Jamendo's counsel sent a formal notice requesting payment of approximately EUR 17.8 million, including default interest (12%) and a lump-sum indemnity (10%).

76. On November 7, 2025, NVIDIA Technologies Belgium was formally summoned to appear before the Belgian court (Ghent).

77. Jamendo's claim is based on its general terms and conditions, which are referenced in the invoice issued to NVIDIA Technologies Belgium.

78. NVIDIA Technologies Belgium has challenged both (i) the existence of any contractual relationship with Jamendo and (ii) the international jurisdiction of the Belgian court.

79. At the introductory hearing on November 20, 2025, an objection to jurisdiction was raised, and it was agreed that this issue would be addressed as a preliminary matter before any discussion on the merits.

80. A hearing on jurisdiction took place on March 26, 2026 before the Ghent court and on June 11, 2026, the Court rejected Nvidia Belgium's jurisdictional objection, ordering that the matter shall proceed and be heard on its merits. Still, Nvidia Belgium disputes the validity and enforceability of Jamendo's invoice.

ROPERS MAJESKI
A Professional Corporation
San Jose

**Count I**

**Copyright Infringement in Violation of 17 USCS § 101 *et seq*.**

81. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

82. Jamendo owns valid and enforceable rights in the copyrighted compilations consisting of the Jamendo Database and the MTG-Jamendo dataset, including their respective selection, coordination, and arrangement of metadata and associated content.

83. On or around June 17, 2026, the U.S. Copyright Office issued Registration No. TX-9-606-566 concerning the MTG-Jamendo Dataset. Jamendo is the owner and holder of Registration No. TX-9-606-566 issued by the US Copyright Office. Attached hereto as **Exhibit F** is a true and correct copy of the copyright registration dated June 17, 2026.

84. On or around July 10, 2026, the U.S. Copyright Office issued Registration No. TXu 2-551-920 concerning the Jamendo Database, with an effective registration date of May 6, 2026. Jamendo is the owner and holder of Registration No. TXu 2-551-920 issued by the US Copyright Office. Attached hereto as **Exhibit G** is a true and correct copy of the copyright registration dated May 6, 2026.

85. The Jamendo Database and the MTG-Jamendo Dataset embody Jamendo's structured metadata systems, including tagging frameworks, classification methods, and organizational schema developed and maintained through substantial investment and ongoing effort. The MTG-Jamendo Dataset was created by Jamendo from the Jamendo Database and is a derivative work thereof.

86. The MTG-Jamendo Dataset was made available under the CC BY-NC 4.0 license, which permits use only for non-commercial purposes and prohibits use directed toward commercial advantage or monetary compensation.

87. Nvidia used the Jamendo Database and the MTG-Jamendo Dataset to develop, train, and operate its commercial audio AI systems, Fugatto and Audio Flamingo.

88. Upon information and belief, Nvidia's use of the Jamendo Database and the MTG-Jamendo Dataset constitutes commercial use within the meaning of the CC BY-NC 4.0 license and exceeds the scope of any permission granted.

89. Because Nvidia's use falls outside the scope of the CC BY-NC 4.0 license, Nvidia's copying and use of the MTG-Jamendo Dataset was unauthorized. Such use also constitutes unauthorized use of the Jamendo Database from which the MTG-Jamendo Dataset is derived.

90. Upon information and belief, Nvidia reproduced Jamendo's copyrighted Jamendo Database and MTG-Jamendo Dataset, including by copying, storing, and processing the Jamendo Database and the MTG-Jamendo Dataset in whole or in substantial part within its machine learning training systems.

91. Such acts constitute reproduction and use of the Jamendo Database and the MTG-Jamendo Dataset without authorization in violation of 17 U.S.C. § 106(1).

92. Nvidia's infringement has been and continues to be willful, including because Nvidia had notice of the licensing restrictions governing the MTG-Jamendo Dataset and continued its conduct notwithstanding such notice. This also constitutes willful infringement of the Jamendo Database from which the MTG-Jamendo Dataset is derived.

93. As a direct and proximate result of Nvidia's infringement, Jamendo has suffered and will continue to suffer irreparable harm, including loss of control over its copyrighted compilation, diminution in the value of the Jamendo Database and the MTG-Jamendo Dataset, and loss of licensing revenue.

94. Unless enjoined by this Court, Nvidia will continue to infringe Jamendo's rights.

Jamendo is therefore entitled to injunctive relief.

95. Jamendo is further entitled to recover its actual damages and any additional profits of Nvidia attributable to the infringement, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

**Count II**

**Copyright Infringement in Violation of 17 USCS § 101 *et seq*.**

96. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

97. Jamendo is the holder of exclusive, worldwide, transferable license to numerous musical works and sound recordings present within Jamendo's commercial licensing business. These exclusive licenses have been issued by various artists. The exclusive licenses include the exclusive rights to reproduce, modify, fix, publish, broadcast, distribute or transfer in any format, publicly communicate, perform, or broadcast, including through digital audio means. For the majority of the works for which Jamendo holds an exclusive license, the artist has issued an underlying open license allowing specific, limited uses of the musical work at issue, such as a Creative Commons license. While such licenses permit certain uses by third parties, such uses have specific conditions and limitations. A common restriction that Jamendo's artist licensors have included in their underlying open licenses is a restriction against commercial uses of their musical works and sound recordings. Such restrictions and limitations are not included in Jamendo's exclusive licenses which expressly include the exclusive right to promote the artist or Jamendo, to be included in Jamendo's Licensing Commercial Program, and even to be used "for the purposes of text and data mining, machine learning, research, training, development, and testing of next-generation AI models, products, services, software, and tools. This includes the commercial and/or non-commercial use and launch of such AI models, products, services,

ROPERS MAJESKI
A Professional Corporation
San Jose

ROPERS MAJESKI
A Professional Corporation
San Jose

software, and tools." Jamendo thus holds exclusive rights to all uses of the musical works and sound recordings at issue beyond those granted in any applicable underlying license. Jamendo's ownership of the exclusive license to the musical works and sound recordings grants it standing to bring claims of copyright infringement for any uses within the scope of its exclusive license. *See* 17 U.S.C. § 501(b); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.* (9th Cir. 2015) 795 F.3d 997, 1002.

98. Attached as **Exhibit A** is a list of musical works and sound recordings for which Jamendo holds an exclusive license as described above, and for which the artists have issued an underlying license with a restriction on commercial uses according to the underlying license identified with each musical work, and the information concerning the registration of each musical work with the U.S. Copyright Office. The information contained in **Exhibit A** is incorporated as if set forth herein.

99. Each musical work listed in **Exhibit A** embodies a musical work as described in 17 U.S.C § 102(a)(2).

100. Upon information and belief, Nvidia used some or all of the musical works and sound recordings listed in **Exhibit A** to develop, train, and operate its commercial audio AI systems, Fugatto and Audio Flamingo. Nvidia's use of the tracks at issue was intended for or directed toward commercial advantage or monetary compensation, including uses generating revenue through advertising, affiliate programs, or product integration, as well as uses that confer a commercial advantage by reducing research and development costs or accelerating the development of commercial products and services, regardless of whether a particular system has been publicly released

101. Upon information and belief, Nvidia's uses of the musical works and sound recordings listed in **Exhibit A** constitutes commercial use within the meaning of the CC BY-NC

ROPERS MAJESKI
A Professional Corporation
San Jose

4.0 license and exceeds the scope of any permission granted. Because Nvidia's use falls outside the scope of the CC BY-NC 4.0 license, Nvidia's copying and use of the MTG-Jamendo dataset was unauthorized, and infringing upon Jamendo's exclusive rights.

102. Upon information and belief, Nvidia reproduced the musical works and sound recordings in **Exhibit A**, including by copying, storing, and processing the musical works and sound recordings in whole or in substantial part within its machine learning training systems.

103. Such acts constitute reproduction and use of the musical works and sound recordings without authorization in violation of 17 U.S.C. § 106(1).

104. Nvidia's infringement has been and continues to be willful, including because Nvidia had notice of the licensing restrictions governing the MTG-Jamendo Dataset and continued its conduct notwithstanding such notice.

105. As a direct and proximate result of Nvidia's infringement, Jamendo has suffered and will continue to suffer irreparable harm, including loss of control over its copyrighted musical works and sound recordings, diminution in the value of its musical works and sound recordings, and loss of licensing revenue.

106. Unless enjoined by this Court, Nvidia will continue to infringe Jamendo's rights. Jamendo is therefore entitled to injunctive relief.

107. Jamendo is further entitled to recover its actual damages and any additional profits of Nvidia attributable to the infringement, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## Count III

### Breach of Contract – CC BY-NC 4.0 License

108. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

ROPERS MAJESKI
A Professional Corporation
San Jose

109. The MTG-Jamendo dataset was made publicly available subject to CC BY-NC 4.0 license, together with the accompanying notice, stating:

"Please note that the MTG-Jamendo Dataset is made available solely for non-commercial research and academic use. Any other use, including but not limited to commercial applications, requires prior written authorization from Jamendo S.A. For any commercial use requests, please contact Jamendo's licensing team at hello@jamendo.com to obtain a license adapted to your project."

110. The CC BY-NC 4.0 license grants permission to use the MTG-Jamendo Dataset subject to express conditions, including a restriction limiting use to non-commercial purposes.

111. The MTG-Jamendo Dataset was further distributed with the clear notice, through the GitHub repository, stating that it is made available solely for non-commercial research and academic use, and that any commercial use requires prior written authorization from Jamendo

112. These notices define commercial use to include any use intended for or directed toward commercial advantage or monetary compensation, including uses generating revenue through advertising, affiliate programs, or product integration, as well as uses that confer a commercial advantage by reducing research and development costs or accelerating the development of commercial products and services, regardless of whether a particular system has been publicly released.

113. Upon information and belief, by accessing, downloading, and using the MTG-Jamendo Dataset, Nvidia accepted and assented to the governing terms and conditions, including both the CC BY-NC 4.0 license and the accompanying restrictions and notices.

114. Upon information and belief, Nvidia breached the license by using the MTG-Jamendo Dataset for commercial purposes without obtaining authorization from Jamendo.

115. Upon information and belief, Nvidia's use of the MTG-Jamendo Dataset for commercial purposes violates the express non-commercial restrictions set forth in the CC BY-NC

4.0 license and the accompanying notice.

116. The governing terms and restrictions were intended to protect the commercial value of the MTG-Jamendo Dataset and Jamendo's licensing interests.

117. Jamendo is an intended beneficiary of those terms and restrictions.

118. Upon information and belief, Nvidia's conduct constitutes a material breach of the governing terms and conditions.

119. As a direct and proximate result of Nvidia's breach, Jamendo has suffered damages, including but not limited to, lost licensing revenue and diminution in the value of the MTG-Jamendo Dataset

120. Nvidia's breach has caused and will continue to cause irreparable harm to Jamendo, for which Jamendo has no adequate remedy at law.

121. Jamendo is entitled to all available remedies for breach of contract, including damages and such further relief as the Court deems just and proper.

**Count IV**

**Breach of Contract – Terms of Use**

122. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

123. Jamendo allows users to make queries to the Jamendo Database and access the music tracks listed within the Jamendo Database at its website, located at www.jamendo.com (the "Jamendo Website").

124. Use of the Jamendo Website is governed by written terms and conditions identified as the Terms of Use. Such Terms of Use have been located at https://www.jamendo.com/legal/terms-of-use. The Terms of Use governing Jamendo's Website have always restricted the type and manner of use of the content found on and through the

Jamendo Website.

125. As a condition of use of the Jamendo Website, all users are required to be bound by the Terms of Use. Specifically, the Terms of Use state that:

> This is a contract between you and Jamendo. By accessing, visiting, or using the Jamendo website and services, whether or not you register, you agree to be bound by these Terms of Use. If you are using the Jamendo website on behalf of your employer or a company, you confirm that you have the authority to bind your employer/company to these Terms of Use and any License/Subscription you may purchase. References to "you" and "your" in these Terms of Use will apply to both you and your employer/company, as applicable. Do not agree to these Terms or any License on behalf of your employer/company if you are not authorized to do so. Please read them carefully. If you do not accept these Terms of Use, do not use Jamendo's website or services.

126. Users must affirmatively accept and agree to be bound by the Terms of Use, in order to be permitted to access the Website content.

127. The Terms of Use at Jamendo's Website further prohibit the use of content from Jamendo's Website for data mining and machine learning, among other uses:

> Users are prohibited from using any content from Jamendo for commercial text and data mining purposes, including but not limited to machine learning, artificial intelligence, or any other automated data analysis techniques. Such unauthorized use may result in legal action. Content from Jamendo may be used for research and scientific purposes, only for non-commercial use, under certain circumstances. We request that you seek prior written authorization from Jamendo before using Jamendo content for such purposes.

128. Upon information and belief, Nvidia accessed, used, and downloaded information and music tracks from the Jamendo Website and thereby accepted and assented to the Terms of Use listed on the Jamendo Website.



ROPERS MAJESKI A Professional Corporation San Jose

129. Upon information and belief, Nvidia breached the Terms of Use from the Jamendo Website by using the information and music tracks downloaded from the Jamendo Website for commercial purposes without obtaining authorization from Jamendo.

130. Upon information and belief, Nvidia's use of the information and music tracks downloaded from the Jamendo Website violates the express restrictions set forth in the Terms of Use.

131. Nvidia's conduct constitutes a material breach of the governing Terms of Use of the Jamendo Website.

132. As a direct and proximate result of Nvidia's breach, Jamendo has suffered damages, in an amount to be proved at trial.

133. Nvidia's breach has caused and will continue to cause irreparable harm to Jamendo, for which Jamendo has no adequate remedy at law.

134. Jamendo is entitled to all available remedies for breach of contract, including damages and such further relief as the Court deems just and proper.

**Count V**

**Unjust Enrichment**

135. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

136. Jamendo has developed and maintains a valuable database and dataset reflecting substantial investment in the creation, organization, and maintenance of musical content, metadata systems, and classification structures.

137. The MTG-Jamendo Dataset, and the Jamendo Database from which is it derived, embody its structured organization of metadata, including tagging frameworks, classifications, and curated arrangements developed through significant time, effort, and expertise.

138. Jamendo has also developed a commercial market for licensing its catalogue, metadata, and related datasets for AI and machine learning purposes.

139. Upon information and belief, Nvidia obtained and used the Jamendo Database and the MTG-Jamendo Dataset in connection with the development, training, and operation of its commercial artificial intelligence systems, Fugatto and Audio Flamingo.

140. Upon information and belief, by using the Jamendo Database and the MTG-Jamendo dataset, Nvidia obtained substantial benefits, including immediate access to a large, organized, and commercially useful catalogue of rights-cleared music with detailed metadata, classifications, and tags suitable for AI training.

141. Upon information and belief, Nvidia also avoided the substantial time, cost, and effort required to build or license a comparable dataset, including acquiring rights from thousands of artists, organizing and maintaining a music database, validating metadata, and developing classification and tagging systems.

142. Upon information and belief, Nvidia has profited, and continues to profit, from its use of the Jamendo Database and the MTG-Jamendo Dataset, including through the commercialization of its Audio Flamingo model and through the development of its Fugatto model, which provides commercial advantage by reducing research and development costs and accelerating Nvidia's AI offerings.

143. Nvidia's retention of these benefits without compensation to Jamendo is inequitable.

144. Jamendo reasonably expected to be compensated for commercial uses of the Jamendo Database and the MTG-Jamendo Dataset, as reflected in its licensing practices and market negotiations for AI-related uses.

145. Upon information and belief, Nvidia knowingly retained these benefits without

payment to Jamendo.

146. Nvidia's retention of such benefits is unjust and inequitable.

147. As a direct and proximate result of Nvidia's conduct, Jamendo has suffered harm, including lost licensing revenue and diminished market value of its dataset.

148. Jamendo is entitled to restitution and disgorgement of the benefits unjustly retained by Nvidia.

**Count VI**

**Unfair Competition – Cal. Bus. & Prof. Code § 17200**

149. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

150. Nvidia has engaged in unlawful business acts and practices within the meaning of California Business and Professions Code § 17200.

151. Nvidia's conduct constitutes unlawful business practices in that it violates, inter alia, the Copyright Act, 17 U.S.C. § 101 et seq., and breaches binding licensing terms governing the MTG-Jamendo Dataset, including the CC BY-NC 4.0 license and accompanying restrictions.

152. By engaging in conduct that violates these statutory and contractual obligations, Nvidia has committed "unlawful" acts within the meaning of Section 17200.

153. Nvidia's conduct is unfair within the meaning of Section 17200.

154. Nvidia has knowingly used the MTG-Jamendo Dataset and Jamendo Database for commercial AI training without authorization, thereby circumventing Jamendo's established licensing framework for AI and machine learning uses.

155. Nvidia operates in a commercial market in which datasets such as the MTG-Jamendo Dataset are licensed for compensation based on scope, scale, and intended use.

156. Nvidia's conduct allows it to obtain the benefit of the MTG-Jamendo Dataset and

ROPERS MAJESKI
A Professional Corporation
San Jose

Jamendo Database without incurring the costs that lawful market participants must bear.

157. Upon information and belief, by avoiding the costs of licensing or independently developing a comparable dataset, Nvidia has reduced its research and development expenses and accelerated the development of its AI systems.

158. Nvidia's conduct thereby confers an unfair competitive advantage in the market for AI technologies, including audio generation and audio-language systems.

159. Nvidia's conduct undermines and threatens the viability of the market for licensed music datasets used in AI training.

160. Nvidia's conduct violates the policy and spirit of laws protecting fair competition and intellectual property, and is immoral, unethical, oppressive, and unscrupulous.

161. Nvidia's conduct is also fraudulent within the meaning of Section 17200.

162. Nvidia has represented, directly or by implication, that its AI systems are developed using lawfully obtained or permissible training data. In fact, upon information and belief, Nvidia has used the MTG-Jamendo Dataset subject to licensing restrictions without complying with those restrictions. This unauthorized use also constitutes unauthorized use of the Jamendo Database from which the MTG-Jamendo Dataset is derived.

163. Such conduct is likely to deceive consumers, business partners, and market participants regarding the legality and provenance of Nvidia's training data.

164. Jamendo has suffered injury in fact and has lost money or property as a result of Nvidia's conduct. Jamendo's injuries include, but are not limited to, lost licensing revenue, lost business opportunities, and diminution in the value of the MTG-Jamendo Dataset and Jamendo Database.

165. Nvidia's conduct has directly caused these injuries by depriving Jamendo of compensation it would otherwise have received in the ordinary course of its licensing business.

ROPERS MAJESKI
A Professional Corporation
San Jose

166. Jamendo is entitled to restitution of all monies wrongfully obtained by Nvidia as a result of its unfair competition.

167. Jamendo is further entitled to disgorgement of Nvidia's ill-gotten gains.

168. Jamendo is entitled to injunctive relief prohibiting Nvidia from continuing its unlawful and unfair conduct.

## PRAYER FOR RELIEF

WHEREFORE, Jamendo respectfully requests that this Court enter judgment in its favor and against Nvidia, and grant the following relief:

1. A judgment declaring that Nvidia has infringed Jamendo's copyrighted compilations and musical works and sound recordings in violation of 17 U.S.C. §§ 106 and 501;

2. A judgment declaring that Nvidia has breached the terms and conditions governing use of the MTG-Jamendo Dataset, including the CC BY-NC 4.0 license;

3. A judgment declaring that Nvidia's use of the MTG-Jamendo Dataset and the Jamendo Database was commercial in nature and without authorization from Jamendo;

4. A judgment declaring that Nvidia has been unjustly enriched at Jamendo's expense;

5. A judgment declaring that Nvidia has engaged in unlawful, unfair, and/or fraudulent business acts and practices in violation of California Business and Professions Code § 17200;

6. Preliminary and permanent injunctive relief prohibiting Nvidia, and its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with it, from directly or indirectly copying, using, reproducing, or otherwise exploiting the Jamendo Database, the MTG-Jamendo dataset, or any portion thereof, as well as any of the musical works and sound recordings listed in **Exhibit A** for commercial purposes without authorization;

ROPERS MAJESKI
A Professional Corporation
San Jose

7. An order requiring Nvidia to cease use of the Jamendo Database and the MTG-Jamendo Dataset as well as any of the musical works and sound recordings listed in **Exhibit A** in connection with its artificial intelligence systems and, to the extent required by law, to delete or destroy copies of the dataset and any materials derived therefrom;

8. An award of Jamendo's actual damages and Nvidia's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b) in an amount no less than EUR 17.8 million, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), which provides for statutory damages of up to USD 30,000 per infringed work, and up to USD 150,000 per infringed work in cases of willful infringement, subject to the Court's determination and applicable law;

9. A finding that Nvidia's infringement was willful, entitling Jamendo to enhanced statutory damages;

10. An award of restitution and disgorgement of all revenues, profits, and other benefits unjustly obtained by Nvidia as a result of its conduct;

11. An award of damages arising from Nvidia's breach of contract, including but not limited to the fair market value of a commercial license for Nvidia's use of the Jamendo Database, the MTG-Jamendo Dataset, and the musical works and sound recordings listed in **Exhibit A**;

12. An order awarding Jamendo restitution and injunctive relief under California Business and Professions Code § 17200;

13. An award of Jamendo's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505 and any other applicable law;

14. An award of pre-judgment and post-judgment interest as permitted by law;

15. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Jamendo demands a trial by jury on all issues so triable.

Dated: October 12, 2026

ROPERS MAJESKI PC

By: /s/ Kevin W. Isaacson
TODD A. ROBERTS
KEVIN W. ISAACSON
Attorneys for Plaintiff
S.A. JAMENDO, a company formed under the laws of Grand Duchy of Luxembourg

ROPERS MAJESKI
A Professional Corporation
San Jose